Colcock J.
From the earliest enactments of the British parliament on the subject, to the present day, a period of about 280 years, it has been the established law of that country, that a copy of a deed, duly enrolled, is as good evidence as the original itself; (Phill. 351) and I think Ido not say too much, when I assert, it was generally considered to be the law of this land from the first enactment on the same subject here, in 1731, (P. E-133, J to the decision of Purvis & Robinson, (1 Bay 485,) a decision much to be regretted, in which it was determined that the loss of the original must be proved to admit the introduction of the copy. But in conformity with that decision, which is considered as obligatory on us, I think the plaintiff entitled to a new triaL All the circumstances *322 of the case and the evidence offered, together with the historical facts of thfe country, afford sufficient proof of the loss to have authorized the introduction of the office copy; fo? we are not warranted by any thing in the decision itself of Purvis &. Robinson, to suppose that ■ any other evidence of loss was intended than such as it required by the rules of the common law,. When evidence is offered on any subject, its order to determine, whether it be competent and sufficient, we must look to the nature of the fact to be proved. If it be one which is susceptible of positive proof, such will of course be required; for the first and fundamental rule of evidence is, that the best which the nature of the thing affords shall be given. Now, generally speaking, it is impossible to prove ithe loss of a thing, in any other way than by shewing that it has been sought for where it might be expected to be found, or was usually kept and that it-could not be found . In some few cases, which may be rather considered as exceptions to a general . rule, the distraction of the paper may be proved, or such cirv cumstances as will induce a belief that it has been destroyed;’" as the burning of a house, the loss , of a vessel, or the ravages , of war. When we consider the infinite variety of ways in which papers are lost, and add to this, that for the most part the loss takes place without the knowledge of the owner, no other than circumstantial evidence can be generally expected.
Now, what are the circumstances and the pf oof before ns in this casef The plaintiff makes out a long chain of title, consisting of seven 'links, tracing a title back to a grant made in 1774. ■ One of the links in his chain is broken. A deed from Nesbit to Dart, executed in 1779 is lost. ' To supply the place of which, he offers a copy taken from the Registers office in 'Charleston. He proves that he has made diligent search for it everywhere. But from the facts of the case, connected with the history of the times, in which this deed was made and recorded, there arises a presumption, stronger than is afforded in'one case in a thousand, that the deed was lost or destroyed by the enemies of the country. In which *323 case, no farther evidence is necessary to be produced. For when it is proved that a deed is destroyed, it follows that there is no occasion to prove that it has been sought for. (Phill. 347 )
Wrri. P. DeSamsure for the motion*
Peareson contra.
This deed was executed in August The city o,f Charleston fell into the hands of the British on the sixth of May following. There was- at that time but one recording office in the state, and consequently a great deal of business to be done: so that one would not have had a right to expect that his deed would be very expeditiously recorded. The deed was recorded, but on what particular day does not now appear. Under those circumstances there is a strong probability that the original was yet in the Registers office at' the. time the town fell, and might have be,en lost or destroyed in; the removal of the papers for the purpose of safe keeping. But if it were not lost in this particular manner, the confusion of the times would furnish innumerable occasions on which it might have been lost; and the great. length- of time which has. elapsed puts it out of the power of the party to furnish any better evidence of the fact.. In the case of Rochell and Holmes, (2 Bay 488,) a copy of a grant was admitted, under circumstances not as conclusive as- those offered on the present occasion,, as to the length of time- and the existence of war.
It is the opinion of the court that the copy deed should •have been admitted, and therefore a new trial is granted, (a)

 T]re Reporter has paid considerable attention, to.the act of 1731, and he is perfectly assured of the correctness and propriety of the objections of his honor to the decision in the case of Purvis vs. Robinson, There can be little doubt that the decision- in Purvis vs. Robinson, was made, upon an inspection of the statute, as published by Judge Grimke, in his Public Lanas ft. 133. Now, the statute, as published there, is so mutilated and defective, as entirely to destroy its principal feature. The Reporter says this with great respect, to the memory of that learned judge, whose legal publications have certainly, been as. useful, as any yet made, in this state. The Re *324 porter was led into an investigation of tlie original publication of thd statute in Trott’s Laws of South-Carolina, 541, by these facts. The: opinion of the court, in Purvis and Robinson, as expressed hy Judge Waties, in 1 Bay 485, is founded upon a construction, of the different clauses of the statute, fiari materia. The 30th clause is connected.1 with the 7th, and controlled in the generality of its expression, by the provisions in the 7th clause. In making this construction, reference is made .to Grimke' Pub. Laws, X33. No reference whatever is made to Trott’s Laws. The writer takes it for granted then, that no reference was made to the statute in, any other form thanaspublished in Grimke'. The case of Purvis and Robinson, as his honor has observed, overruled what was considered the law from the very enactment, of the statute in 1731, up to the decision of Purvis and Robinson, 1795. But, besides overturning what was the generally received opinion of the lair, it overruled the case of Anderson vs. Gilbert, made in 1794, (1 Bay 368.) Upon a reference'to these cases, these facts will appear. The former opinions of the profession, and the decision in Anderson vs. Gilbert, were founded upon the whole statute, as published by Trott. In that case express reference was made to Trotf, and, Grimke”sR.L. was at thattimebutanewpublication, which hadnot yet moulded the opinions of thelawyers. It was unfortunate in the case of Purvis vsRobinson, that a construction, exfiarimateria, of thestatute, should have been made upon, a publication of the act which did not contain six whole clauses, out of thirty one. For, of the very 7th clause, which his honor Judge Waties connected with the 30th, and wherewith he controlled the generality of the expression of the 30th clause, not one half of it is published by Judge Grimke'. Both the beginning of the clause, and the end, are omitted!! Nothing else, could have mislead the acute and vigorous intellect of that learned and accomplished judge, in the decision of Purvis vs. Robinson.
Let us, now, with great deference to the opinions of the judges, in Purvis vs. Robinson, examine the whole statute, as published by Trott. To understand so much of the statute, as is¡ necessary for the better .comprehension of these observations, without a reference to Trott, it should be observed, that the province of Carolina was the property of the Lords Proprietors, until the 1st of June, 1729, when George II. purchased it of the proprietors, except Lord Carteret’s share. There being eight proprietors, he paid ¿617,500 for seven eights. Lord Carteret’s share, I believe, was afterwards located in North Carolina. Ail these facts will appear by the act of parliament, 2 Geo. II. c. 34. ( Trotts Laws 483.) By this act, it is recited, that, whereas the lords proprietors, “had made divers prorate arid cotí* -veyances ” &c. “of divers parcels of land, situate within ths-said pro- *325 vinco,” “and under certain Quit Rents,” Wc. in consideration of then, relinquishing to his majesty all arrears of such Quit Rents, his majesty paid them £5000, and they set over and conveyed to the King all their claim and right to such Quit Rents. Three years after this statute, in the 5th year of George II. the general assembly of South Carolina- passed an act, having for its principal object, “The securing’ of his majesty’s Quit Rents, ” recognizing the contract with the proprietor's, and in pursuance of the statute, 2 Geo. II. c. 34. This'Statute occupies nineteen pages folio. It is headed, throughout, “.Quit Rents. ” The King, through his governor, Robert Johnson, by it, relinquishes all claim for Quit Rents in arrear, upon condition that the assembly ‘'•provide that all possessors of land, in his majestys province of South Carolina, do forthwith register their respective grants,” and “every person possessing land by grant from the late lord proprietors,” in the Auditor Generals office, “for the future pay unto his majesty, Ac. of the annual Quit Rent, reserved upon such grants. The act then provides, — “to the End therefore that your majesty’s Quit Rents may be better ascertained, and the future payment thereof better regulated,” See. “ Se it therefore enacted.', is’e. viz: That all persons shall register their patents or grants, or memorials thereof in the Auditors office, to he created. These are the provisions of tht first clause.
The second clause, provides, that all persons claiming lands, in the Province, should record their “patent grants,” or “ last mesne conveyance or deed, or will, under which the part y immediately claims,” in the Auditor’s office, within eighteen months, “ which entries or registers, of all and every snch grants, 8tc.” shall be sufficient evidence to charge the parties’with, the rents respectively.”
The third clause, requires Guardians, Trustees &e. to register the grant or deed under which they immediately claim, in like manner.
.Thefourth clause, fixes the Auditors office in Charleston. .
By the. fifth clause, Rents are to be paid in proclamation money.
By the sixth clause, if original grants made by the lords proprietors be lost, the Quit Rents, are to be rated at!2d per 100 acres.
The seventh clause, that which has caused so much dispute, is very long, and provides, that if lands are not registered within eighteen montiis, after the erection of the Aiiditor General’s office, the same shall be considered as vacant land, and any person may take up the same: Saving, however, to minors, feme coverts, &c. and "f Provided always, nevertheless, that if any person or persons, who sire possessed of any lands &c. in this Province, have by fire or other accident, lost their original grant, or deed [or, as in the 2nd clause, *326 ** or last mesne conveyance,’’} or will, unclor which they immediately claim,” if they make oath of their loss, then, in such case, if they can. procure “ an attested copy of such grant, deed or will, or probat of the same,” from the Secretary’s office, of Registers office, of the Province, (for up to this time no persons were bound to record their deeds) and produce the same unto his majesty’s Auditor or his Deputy, he shall register*.the same, “as before directed for original grants, deeds, or wills;” and the proviso then declares, that, certificate of the same, or the attested copy, and the record of the same in the Secretary’s and Register’s office, together with possession, “shall be< deemed good evidence of title at law, until better evidence of title appear. ” And a- second proviso or saving, in the same clause, enacts, that if any person has lost his grant, deed, or will, as aforesaid, and no record of it can be procured, then upon his taking oath of such loss, and proving his possession, he may get out a new grant, paying a Quit Rent of lid. per 100 acres. These are all the provisions of this clause; and they have evidently no connexion with any general rule of evidence. They are particular provisions for particular cases, which must, from the provision of the clause, have occurred within the eighteen months allowed by the act.
All the other clauses, 8th. 9th. 10th. 11th. 12th. 13th. 14th. 15th., 16th. 17th. relate entirely to Quit Rents. The 18th clause provides, a Registry office for recording deeds, conveyances and' mortgages. The 19th clause clears up doubts as to certain grants, abolishes livery of seizen, ifc. The 20tlv clause relates again to the Rents. The 21st. to fees of office. The 22d. 23d. 24th. 25th, 26th. 27th. 28th. clauses, are on subjects relating to the titles of the province or to the rents.
The 29th clause, is a general law, as to feme coverts conveying their inheritance. The 30th. and 31st. are provisions ofgenerallaw. The 30th. is the clause under which the case in the text arose. It is in the following words: '
“ And be it further enacted by the authority aforesaid, That the records of all grants in the office of the Auditor General or his deputy, and the records of all grants and deeds duly proved before a. justice of the peace, according to the usual method, and recorded or to be recorded in the Register’s office of this province, and also,, the attested copies thereof, shall be deemed to be as good evidence in the law, and of the same force and effect as the original would have been if produced, in all courts of law and equity.”
Now this clause, speaks of all grants and deeds, and provides a general rule of evidence, The 7th clause only provided, that in case a man had lost his title upder which he immediately claimed, he might *327 'within eighteen months from the time of passing the act get a copy, ■and register it; which, bóing so .registered, should be evidence, of what he had already proved to be lost. The 30th clause requires all deeds to be proved before they are recorded, and if they are so proved and recorded, declares attested copies of them or the records of them, shall be as good evidence as theoriginals. This law was not confined to eighteen months. How can these two clauses then be connected together? They have no more connexion with each other, than any other two clauses.in the act; except that both have the words, “ grant and deed” in them. The 30th, clause is almost as distinct from the other clauses, as if it were a separate act, General laws are often passed in this way. The four last clauses, indeed, are each general laws. The 28th, abolishes livery of seisin; the 29th, provides a method for feme coverts’ conveying their estates; the 30th, provides a general rule of evidence; and -the last, provides, that if upon survey it turns otit that a grantee has more laud, than his grant calls for, he still shall be entitled to it, A law under which the country has acted ever since; and perhaps has forgotten, from whence the rule came.
The sole object of the 7th. clause, was to let the king or his agents know whom to look to, for the rents; and the last conveyance would always tell.
Toprove the loss of a deed! Can any thing be more difficult?Jlt is said prove diligent search has been made. This is done by the party himself. How will he prove it? He gets a friend to search for -him! Where will he look? Into the public offices? That he may do, But suppose the plaintiff’s ancestor has lost the deed, and the plaintiff himself has the papers of his ancestor? where must he go to look? Into the plaintiffs house? And if he please, he may conceal the original {admitting it to be aforgery) and upon search of all the old papers, it is not found. Must search be made in the house of every relation or intimate friend? Or suppose the plaintiff looses the deed himself, who will prove it? What degree of search is enough? Where to begin or where to end? — The law evidently intended to avoid these difficulties, and therefore required the deed to.be proved before it was recorded, and after that, an attested copy is made to be as good evidence as the original, ■
In Tennessee the affidavit of the parties counsel stating that it was out of the power of the principal to produce an original grant or deed, was held sufficient proof of the loss to let in the registered copy. (Smith vs. Martin, 2 Overton’s Rep. 208.) In New York, Pennsylvania, and North Carolina, the testimony of the plaintiff is admissible as to the loss of an instrument. (1 Starkie 349. note (1.) See as to proof of loss, generally. (Ib. 350.)
*328 It appears also to the Reporter that copies exemplified under the hand and seal of the Register is sufficient, without the proof by a witness of the correctness of the copy. For “ where the law intrusts a particular officer with the making of copies, it also gives credit to them in evidence, without further proof.” See 1 Starkie on Evi. 154, 365, 368, note (1.) where all the cases are collected.